UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GWENDAL L. SANCHEZ

           Plaintiff,

v.                                              Case No.  5:09-cv-166-Oc-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for social security disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 17 & 18.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insruance benefits on January 4, 2006, alleging an onset date of April 28, 2005. (R. 20, 83.) Her disability claims were denied initially and upon reconsideration. (R. 49, 46.) Plaintiff requested a hearing before an Administrative Law Judge, which was held on February 27, 2008. (R. 20.) On April 18, 2008, following the hearing, Administrative Law Judge Douglas A. Walker (the "ALJ") issued a decision unfavorable to Plaintiff. (R. 20-28.) Plaintiff's request for review of that decision was denied by the Appeals Council on

February 19, 2009, rendering the ALJ's decision the final decision of the Commissioner. (R. 5-7.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD

**A. *Personal Background***

Plaintiff, born in 1957, was fifty years old when the ALJ rendered his decision. (R. 11.) She completed high school, and two years of college. (R. 23.) Plaintiff alleged disability due to rheumatoid arthritis, back pain and hand stiffness. (R. 23, 87.) She reports taking various medications for her arthritis and pain, including Medrol, Methotrexate, Zoltaren, Darvocet, Dicofenac, Flexeril, and Ibuprofen. (R. 92.) Plaintiff

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

worked as a bus driver from September 1990 until her disability onset date, and as a Sterilizer and Bank Teller prior to 1990. (R. 94.)

**B.** *Physical Impairments*

According to her medical records, Plaintiff injured her back on the job in March 2005, and was sent for treatment. She was discharged from treatment, as ready to return to work, two weeks later. However, in conjunction with the treatment, the physician found that she had a high ANA titer, consistent with either Lupus or Rheumatoid Arthritis. (R. 151) That same month, Plaintiff was diagnosed with Rheumatoid Arthritis ("RA"), by Howard L. Offenberg, her treating Rheumatologist. (R. 180-189)

Over the next two years, Plaintiff saw Dr. Offenberg every one to two months, primarily with complaints about stiffness and soreness in her hands, as well as pain in her shoulders and feet. Dr. Offenberg's records are not very descriptive, however he prescribed medications for the RA, and gave her occasional Kenalog injections for the pain. In September 2007, Dr. Offenberg completed a Medical Assessment of Ability to Do Work Related Activities for Plaintiff, and concluded that she would not be able to sustain any work activity for 8 hours a day, 5 days a week, 52 weeks a year.  Dr. Offenberg wrote on the assessment that "presently her RA is active, if improves then her status can change." (R. 200.) After Plaintiff stopped working and lost her insurance in June 2007, she began seeing Matthew Kosboth, MD, at the North Florida/South Georgia VA for her medical care. (R. 226.) At that time, Plaintiff had been off of her RA medication for several months. Dr. Kosboth confirmed the Rheumatoid Arthritis diagnosis, and started her on medication again. Dr. Kosboth's records show that

6

Plaintiff was not interested in beginning TNF Inhibitor injections for her RA, and chose to continue with methotrexate alone, which appeared to be helping her. (R. 222.)[21]

## IV. DISCUSSION

Plaintiff's brief presents four issues related to the ALJ's decision. First, the Plaintiff argues that the ALJ erred by applying the Grid Rule for persons between 45 and 49 years of age, when in fact Plaintiff was 50 at the time of the ALJ's determination. Second, Plaintiff argues that the ALJ erred by relying upon testimony of the VE that the Plaintiff's skills were transferable, although the ALJ never made a specific finding that the Plaintiff's skills were transferable. Third, the Plaintiff argues that the ALJ failed to articulate good cause for failing to credit the opinion of Dr. Offenberg, concerning Plaintiff's ability to work. Lastly, Plaintiff argues that the RFC assessment by the ALJ is vague and does not accurately reflect the necessary limitations described in the record.

The Court finds that the ALJ's decision fails to provide the Court with sufficient reasoning to determine that he properly applied the law, and to find that there is substantial evidence supporting his determination. In order to make such a finding, the matter must be remanded for further consideration as described herein.

The most obvious problem with the ALJ's decision is his use of the younger age category when analyzing the Plaintiff's disability status. Although the ALJ acknowledged in his decision that Plaintiff's age was 50[22] (R. 23) the ALJ later found that Plaintiff was a younger individual, someone age 18 to 49. (R. 27.) The error was not simply a matter of

---

[21] Dr. Lawrence Edwards, Chief of Rheumatology and the NF/SG VHS, reported in December 2007 that there was "marked improvement in RA, but still with residual activity." (R. 223A.)

[22] Plaintiff turned fifty on September 12, 2007, six months before the date of the ALJ's decision.

semantics because when the ALJ applied the Medical Vocational Guidelines, he utilized Grid rule 201.21, for "a younger individual," rather than the rule for a person who is "closely approaching old age"- someone from 50 to 54 years of age. (R. 27.)

In addition to the extent that the younger individual category would be applicable to the award of benefits for the few months before Plaintiff turned 50, Plaintiff, nonetheless, would still be in borderline category. In a borderline case the ALJ should not mechanically apply the age categories,[23] but rather was required to explain his reasons for applying the grid rules applicable to a younger individual.[24]  The ALJ failed to do so and therefore on remand the ALJ should make an individualized determination of the age factor and properly consider the Plaintiff's borderline status at least as to the several months before Plaintiff turned fifty.

The ALJ's error with regard to Plaintiff's age was conflated by the ALJ's failure to evaluate and properly consider the issue of transferability of skills. In his opinion, the ALJ stated that" the transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills." The problem is that this statement is accurate only if the Plaintiff is considered a younger individual.[25] On the other hand, if the Plaintiff is classified as  "closely

---

[23] 20 C.F.R. 404.1563(b).

[24] Rogers v. Schweiker, 558 F Supp. 1358, 1360 (N.D. Ala. 1983);

[25] Grid Rules 201.21 and 201.22 each concern younger individuals with at least a high school education, who are limited to sedentary work. Rule 201.21 applies to those without transferable skills, and Rule 201.22 applies to those with transferable skills, and each rule results in a finding that the claimant is not disabled.

8

approaching advanced age," her disability status would depend entirely upon whether or not she has transferable skills.

Grid Rules 201.14 and 201.15 – which address individuals like Plaintiff, who are approaching advanced age – provide that the claimants should have at least a high school education, skilled or semiskilled previous work experience, and should be capable of sedentary work. If a claimant does not have transferable skills, the claimant is considered disabled under rule 201.14. On the other hand, if the claimant has transferable skills the claimant is not disabled pursuant to rule 201.15. Consequently, contrary to the ALJ's finding that the issue of transferability of skills was not material, the determination of whether the Plaintiff does or does not have transferrable skills is dispositive to the determination of whether she is disabled. Given that the issue of whether Plaintiff has transferable or non-transferable skills can be decisive in determining if the Plaintiff is disabled or not disabled, the ALJ was required to make a specific finding concerning the transferability of the Plaintiff's skills. Because the ALJ failed to do so the matter is due to be reversed so that the ALJ can properly evaluate whether Plaintiff has transferable skills and make a specific finding as to this issue.

Additionally, in evaluating whether Plaintiff has transferable skills, the ALJ is required to consider the skills Plaintiff acquired in her Past Relevant Work.[26] Past Relevant Work is defined as work experience gained in the prior fifteen years.[27] In the instant case, although the ALJ did not make a finding of transferability of skills, the VE

---

[26] SSR 82-41.

[27] 20 C.F.R. §§ 404.1565, 416.925 (2008).

considered the issue at the hearing and stated that the Plaintiff had transferable skills from her past relevant work as a bank teller. (R. 249-251.) There is a problem with this statement, however. The record reflects that the Plaintiff worked as a bank teller in the early 1980s, more than 15 years prior to her alleged onset date or prior to the date of her application. Accordingly, the ALJ should ensure that in evaluating whether Plaintiff has transferable skills he should only consider skills that Plaintiff acquired in jobs within the fifteen year period considered as past relevant work.

The third issue presented by the Plaintiff is the ALJ's treatment of the opinion of Dr. Offenberg, the Plaintiff's treating rheumatologist. Generally speaking, the ALJ is required to give substantial weight to the opinion of the Plaintiff's treating physician, unless good cause is shown to the contrary.[28] If the ALJ chooses to disregard the treating physician's opinion, the ALJ must clearly articulate his reasons for doing so.

Although the ALJ mentioned Dr. Offenberg's treatment notes twice, his discussion of the notes is very limited. The ALJ largely ignored Dr. Offenberg's opinion concerning the Plaintiff's ability to work and he never articulated a reason for disregarding the opinion. While the Commissioner advances reasons why the ALJ may have chosen not to credit Dr. Offenberg's opinion, the ALJ is required to articulate those reasons so that the Court can determine whether the reasons are supported by substantial evidence. Because the ALJ failed to articulate his reasons for not according

---

[28] Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir 2004); 20 CFR 404.1527(d)(2).

substantial weight to Dr. Offenberg's opinion, on remand, the ALJ must either accept the treating physician's opinion or clearly articulate his reasons for discrediting it.[29]

Lastly, the Plaintiff complains that the ALJ's Residual Functional Capacity Assessment was vague and does not accurately reflect the types of manipulative limitations applicable to the Plaintiff. Specifically, the ALJ found that the Plaintiff should avoid "performing activities requiring bilateral manual dexterity for fine manipulation with handling and reaching, and frequent repetitive manipulations of the left hand..."

This RFC assessment confuses certain types of limitations, particularly in the first sentence which refers to "fine manipulation with handling and reaching." It is not clear – and candidly confusing – whether the Plaintiff should avoid all fine manipulation of both hands, fine manipulation of both hands at the same time only, or just those fine manipulations which also involve handling and reaching. Moreover, the ALJ's discussion of Plaintiff's left hand only adds to the confusion, leaving unresolved what type of activity the Plaintiff could do with her right hand that she cannot do with her left hand. Furthermore, as Plaintiff points out in her memorandum, the limitations contained in the RFC do not match the limitations described in the Commissioner's own Physical Residual Functional Capacity Assessment form (form SSA-4734-BK; R. 171-178, 190-197.)

During the ALJ's discussion of the Plaintiff's RFC with the VE, the ALJ suggested an RFC that was not identical to the RFC in his decision. In the ALJ's first hypothetical to the VE, the ALJ referred to an individual who "can't perform activities requiring bilateral manual dexterity." (R. 249.) Later, the ALJ proposed a second hypothetical

---

[29] Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).

11

concerning an individual who "can perform activities requiring bilateral manual dexterity for gross but not fine manipulation with handling and reaching." (R. 250) The VE answered the question without further elaboration. However, because of the inconsistency in the RFC included in the hypothetical, the VE's opinion may have been based upon a different understanding of Plaintiff's RFC, all of which impacts the bona fides of the VE's opinion concerning other work which the claimant can perform which exists in the national economy. The VE's testimony must be based upon a hypothetical which includes all of Plaintiff's impairments in order for the opinion to constitute substantial evidence that the ALJ can rely upon.[30] Accordingly, on remand, the ALJ should repose an appropriate hypothetical to the VE, which includes all of Plaintiff's impairments and clarifies the manipulative limitations, if any.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Order. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 10, 2010

Copies to:
    All Counsel

GARY R. JONES
United States Magistrate Judge

---

[30] Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007); Crawford, 363 F.3d at 1161.